999 A.2d 466

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DELORES RANDALL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 8, 2010—Decided March 25, 2010.

Before Judges REISNER, YANNOTTI and CHAMBERS.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Charles H. Landesman,* Designated Counsel, on the brief).

*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney for respondent (*Courtney M. Cittadini,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CHAMBERS, J.A.D.

Defendant Delores Randall was convicted by a jury of fourth degree obstructing the administration of law, *N.J.S.A.* 2C:29–1. Her sentence included three years probation and 500 hours of community service. Defendant appeals this conviction and sentence and also contends that the trial court erred in denying her admission into the Atlantic County pretrial intervention program (PTI).

We recognize that the Prosecutor's Office erred in attempting to make a guilty plea a condition of defendant's admission into the program. Nonetheless, the other reasons given by the prosecutor to explain the denial of defendant's admission into PTI are sufficient to justify that decision. We find no merit in the other issues raised by defendant and affirm her conviction and sentence.

## I

Defendant's conviction arises out of the following events. In the early morning hours of September 25, 2005, defendant was driving home on the Atlantic City Expressway and talking to her husband on her cell phone. Roger Nicholson, a State Trooper, observed her vehicle drifting across lanes. The Trooper stopped her vehicle, and when speaking to defendant, he observed signs suggesting that she might be intoxicated, including the odor of an alcoholic beverage and fumbling with paperwork. He contends that defendant failed the field sobriety tests he administered, although defendant thought she had passed them.

The Trooper placed defendant under arrest and handcuffed her. At that point, defendant became defiant and belligerent and started to scream. She refused to get into the Trooper's vehicle. By her own testimony, she went into a fetal position and was banging against the police vehicle, yelling and screaming. Backup officers arrived, and defendant was eventually subdued with mace. Much of these events were caught on the Trooper's videotape. Defendant, who testified at her trial, explained that she was "creeped out" by the Trooper, and that she is "scared of police officers" because her "brother died at the hands of a police officer." The Trooper testified that defendant kicked him in the groin, but defendant denied doing so.

As a result of these events, defendant was charged with fourth degree obstructing the administration of law, *N.J.S.A.* 2C:29–1, and fourth degree aggravated assault on a police officer, *N.J.S.A.* 2C:12–1(b)(5). Defendant pled not guilty.

Defendant requested diversion into PTI. The criminal case management officer recommended PTI for defendant. However, the assistant prosecutor responded by letter dated December 4, 2006, that "[i]n view of the assaultive nature of the offense, I am not enthusiastic about diversion" but indicated that she would agree to PTI if defendant entered an unconditional plea of guilty. Defendant refused to plead guilty.

By letter dated March 5, 2007, the prosecutor denied defendant's admission into PTI, writing that because defendant would not agree to a guilty plea "[t]herefore this office now submits a letter of rejection." The letter then went on to set forth various reasons why PTI was rejected, including defendant's "combative" behavior with the Trooper, the fact that she repeatedly kicked the Trooper and screamed profanities and continued to act in a violent manner at the station, and that PTI was opposed by the Trooper who characterized defendant's conduct as "extremely violent." The letter also noted that "defendant claims that she was passive and non-combative" which "varies greatly" from the Trooper's version of events and was contrary to events depicted in the videotape. The letter goes on to state that "PTI is an inappropriate forum for resolution of such widely divergent factual situations." Defendant's motion to compel admission into PTI was denied by the trial court.

At trial, the jury acquitted defendant of the charge of aggravated assault upon a police officer, but convicted her of obstructing the administration of law. Defendant's motion for a new trial was denied. The trial court sentenced defendant to three years probation, 500 hours of community service, and imposed the requisite assessments and fees. The trial court also required that she attend and complete an anger management course and maintain full-time employment.

On appeal, defendant raises the following issues:

*POINT I*

DEFENDANT'S MOTION TO COMPEL ADMISSION INTO THE ATLANTIC COUNTY PRETRIAL INTERVENTION PROGRAM WAS ERRONEOUSLY DENIED BY THE TRIAL JUDGE.

*POINT II*

DEFENDANT'S CONVICTION OF OBSTRUCTING ADMINISTRATION OF LAW OR OTHER GOVERNMENTAL FUNCTION SHOULD BE VACATED BECAUSE THE JURY FAILED TO FIND THAT THE DEFENDANT COMMITTED AN AGGRAVATED ASSAULT UPON A LAW ENFORCEMENT OFFICER. (NOT RAISED BELOW).

*POINT III*

DEFENDANT'S MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED BY THE TRIAL JUDGE.

*POINT IV*

THE DEFENDANT'S SENTENCE WAS EXCESSIVE.

## II

Defendant maintains that her motion to compel admission into PTI should have been granted. The PTI program, governed by *N.J.S.A.* 2C:43–12 to –22 and *Rule* 3:28, is a diversionary program that permits those charged with criminal conduct "to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." *State v. Nwobu,* 139 *N.J.* 236, 240, 652 *A.*2d 1209 (1995). It is designed "to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system. Eligibility is broad and includes all defendants who demonstrate the will to effect necessary behavioral change such that society can have confidence that they will not engage in future criminality." *State v. Watkins,* 193 *N.J.* 507, 513, 940 *A.*2d 1173 (2008).

Diversion into a PTI program is a "quintessentially prosecutorial function," and the prosecutor has broad discretion to decide whether a defendant should be admitted into PTI. *State v. Wallace,* 146 *N.J.* 576, 582, 684 *A.*2d 1355 (1996). However, that discretion, while broad, is not unlimited. The exercise of that discretion must be guided by the purposes of the program and the criteria set forth in the governing statute and court rule for admission into PTI. *N.J.S.A.* 2C:43–12(e); *R.* 3:28; Pressler, *Current N.J. Court Rules,* Guidelines to *R.* 3:28 (2010).

The statute requires that the prosecutors and program directors consider the following criteria when determining whether a particular defendant should be allowed to participate in the PTI program:

(1) The nature of the offense;

(2) The facts of the case;

(3) The motivation and age of the defendant;

(4) The desire of the complainant or victim to forego prosecution;

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

[*N.J.S.A.* 2C:43–12(e).]

 The court will overturn a prosecutor's decision denying PTI where it finds a " 'patent and gross abuse of discretion.' " *State v. Watkins, supra,* 193 *N.J.* at 520, 940 *A.*2d 1173 (quoting *State v. Watkins,* 390 *N.J.Super.* 302, 305, 915 *A.*2d 561 (App.Div. 2007)). The defendant bears the burden of showing by clear and convincing evidence that this standard has been met. *Ibid.* For a prosecutor's decision denying PTI to represent a "patent and gross abuse of discretion," the decision must have " 'gone so wide of the mark sought to be accomplished by PTI that fundamental

fairness and justice require judicial intervention.' " *Ibid.* (quoting *State v. Wallace, supra,* 146 *N.J.* at 582–83, 684 *A.*2d 1355). That standard is met where the decision " '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.' " *State v. Negran,* 178 *N.J.* 73, 83, 835 *A.*2d 301 (2003) (quoting *State v. Bender,* 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979)).

■ Defendant contends that the Prosecutor's Office improperly conditioned her participation in PTI upon her pleading guilty to the charges. She further asserts that the Prosecutor's Office failed to provide her with an adequate statement of reasons of why she was rejected. She notes that all of the factors set forth in the rejection letter were present when the Prosecutor's Office initially agreed to PTI conditioned upon the guilty plea.

In this case, the Prosecutor's Office incorrectly attempted to condition defendant's participation in PTI upon her pleading guilty. *Guideline 4* governing the program provides that:

Enrollment in PTI programs should be conditioned upon neither informal admission nor entry of a plea of guilt. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective.

[Pressler, *supra, Guideline 4* at 1067.]

The official comment to *Guideline 4* explains that "[n]either admission of guilt nor acknowledgment of responsibility is required. Steps to bar participation solely on such grounds would be an unwarranted discrimination." *Id.* at 1068. As a result, the Prosecutor's Office erred in requiring defendant to plead guilty as a prerequisite for admission into PTI.

■ Nonetheless, the official comment to *Guideline 4* also recognizes that defendants must assume some responsibility for their conduct in order for the program to be effective, explaining:

[M]any guilty defendants blame their behavior on society, family, friends or circumstance, and avoid recognition of the extent of their own role and responsibility. While such an attitude continues, it is unlikely that behavioral change can occur as a result of short-term rehabilitative work. An understanding and accep-

tance of responsibility for behavior achieved through counseling, can and often does, result in the beginnings of the defendant's ability to control his/her acts and is an indication that rehabilitation may, in large measure, have been achieved. [*Ibid.*]

Here, the prosecutor's rejection letter indicated that defendant had not recognized responsibility for her conduct, maintaining in the face of a contradictory video that she had had been passive and non-combative. When we couple the failure to recognize the wrongfulness of her action with the violent disruptive conduct that led to these charges and the fact that she was directly combative with a law enforcement officer, we cannot say that the Prosecutor's Office patently and grossly abused its discretion in denying defendant admission into PTI.

### III

■ Defendant argues that her conviction should be set aside and that a new trial should be ordered. She maintains she is entitled to this relief because the jury's verdict was inconsistent, noting that the jury found her not guilty of aggravated assault upon the police officer yet found her guilty of obstructing the administration of law.

■ We reject this argument because even if the verdicts are regarded as inconsistent, that is not a basis for reversing the conviction. The law does not require that verdicts in criminal cases be consistent. *State v. Muhammad,* 182 *N.J.* 551, 578, 868 *A.*2d 302 (2005). " 'Each count in an indictment is regarded as if it was a separate indictment.' " *Ibid.* (quoting *State v. Banko,* 182 *N.J.* 44, 53, 861 *A.*2d 110 (2004)). When evaluating a jury verdict, "we do not attempt to reconcile the counts on which the jury returned a verdict of guilty and not guilty." *Ibid.* Rather, we merely determine whether the record adequately supports the guilty verdict. *Ibid.* Further, "[w]e do not speculate whether verdicts resulted from jury lenity, mistake, or compromise." *Ibid.*

Defendant also challenges the sentence contending that she should have received a lesser period of probation and a lesser

number of community service hours. However, after a careful review of the record, we find no error in the sentence that the trial court imposed on defendant. Accordingly, we affirm the November 7, 2008 judgment of conviction and sentence.

Affirmed.