**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1460-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KAL E. ELHOREGY,
a/k/a KHALID,

    Defendant-Appellant.

_____

Argued October 16, 2024 – Decided October 31, 2024

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 22-03-0210.

Suzanne Axel argued the cause for appellant (Neary Law, LLC, attorneys; Brian J. Neary, of counsel and on the brief).

K. Charles Deutsch, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; K. Charles Deutsch, of counsel and on the brief).

PER CURIAM

Defendant Kal Elhoregy appeals from a March 8, 2023 Law Division order denying his motion for admission into the pretrial intervention ("PTI") program after being rejected by the Bergen County Prosecutor's Office ("BCPO") and the Bergen County PTI Program Director ("PTI Director").  We affirm.

I.

The facts are taken from the motion record.  On October 24, 2020, at a little after 9:00 p.m., defendant was driving his 2017 BMW down Route 17 in Hasbrouck Heights at over 100 miles per hour.  He lost control of his vehicle, careened off the highway, and slammed into a 2002 Chrysler that was parked in the Kentucky Fried Chicken restaurant parking lot.  Data from the Event Data Recorder in defendant's vehicle revealed that his final speed before the collision was ninety-eight miles per hour and that he was pressing the accelerator pedal at ninety-nine percent.  The data also showed defendant's foot did not touch the brake pedal prior to impact.

The front seat passenger in defendant's vehicle suffered a serious injury and was transported to a hospital.  Sitting in the 2002 Chrysler were two nineteen-year-old college students.  The force of the impact by defendant's vehicle ejected the passenger from the parked car.  Miraculously, he escaped with relatively minor injuries.  However, the injuries to the occupant in the

A-1460-23

driver's side, who was on the side of the impact, were life threatening. She was a National Honors Society student and freshman soccer player for Rutgers University pursuing a career in veterinary medicine. When first responders arrived, she was unresponsive and had to be extricated from her vehicle. She was rushed to Hackensack University Medical Center. There, staff determined that she was in a Glasgow Coma Scale score 3 coma (the most severe), exhibiting zero eye opening, zero verbal response, and zero motor response to stimuli. Although she emerged from the coma, she remained hospitalized for over a month. She now has a prosthetic skull and suffers from significant cognitive impairment. Her permanent brain injury has forced her to abandon her dream of graduating college and becoming a veterinarian.

After an investigation, defendant was charged by complaint with a single count of fourth degree Assault by Auto, N.J.S.A. 2C:12-1c(1). Defendant then made an application to PTI. While the PTI application was pending, a Bergen County Grand Jury indicted defendant with: two counts of third degree Assault By Auto, N.J.S.A. 2C:12-1c(2) and one count of fourth degree Assault By Auto, N.J.S.A. 2C:12-1c(1).

By way of joint written correspondence, Senior Probation Officer and PTI Director Leslie Darcy, declined to recommend defendant's enrollment into PTI.

A-1460-23

The letter reflected that in rendering their recommendation, they considered all of the factors pursuant to N.J.S.A 2C:43-12 and <u>Rule</u> 3:28. They cited the injuries to the victims and the objection of the driver's family as the predominant reasons why "early rehabilitative services and the supervision offered by the PTI Program would not best serve the interests of the State . . . ." In a six-page detailed letter dated June 15, 2022, the State analyzed each of the seventeen factors pursuant to N.J.S.A. 2C:43-12(e) and advised it concurred with the PTI Director's opposition to defendant's enrollment in the PTI program.

In June 2022, to both correct a scrivener's error and to reflect the State's presentation to the Grand Jury, counts 1 and 2 of the indictment were amended by the court to fourth degree Assault by Auto, N.J.S.A. 2C:12-1c(1), and count three was dismissed.

Defendant appealed the denial of admission into PTI and requested that the court admit him over the prosecutor's and PTI Director's objections. On March 8, 2023, the motion court denied defendant's appeal and upheld the rejection of defendant's PTI application. In an oral decision, the court acknowledged it could "only overturn a prosecutor's rejection in the narrowest of circumstances." After reviewing the enumerated factors governing admission into a PTI program, the court stated, "there are no extraordinary and unusual

circumstances sufficient to overcome the prosecutor's rejection of the defendant's application." The court also believed the "assistant prosecutor conducted a thorough review of the relevant statutory factors and guidelines, including but not limited to the nature of the offense pursuant to N.J.S.A. 2C:43-12b(1) and (2) [and] the facts of the case pursuant to 2C:43-12e(2)."

Based on these findings, the court concluded the BCPO's denial of defendant's application for admission to PTI was premised upon a consideration of all the relevant factors and did not include any irrelevant or inappropriate factors. In denying the application, the court concluded defendant's rejection from PTI was not a patent and gross abuse of discretion by the BCPO.

After being denied admission to PTI, defendant pleaded guilty to one count of fourth degree Assault by Auto. In accordance with a negotiated plea agreement, the State recommended a noncustodial sentence and dismissal of the remaining charge and motor vehicle tickets. Defendant was sentenced in a January 5, 2024 judgment of conviction to a one-year term of probation and was required to pay $15,000 restitution and mandatory fines and penalties.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE CRIMINAL DIVISION'S RECOMMENDATION AGAINST ENROLLMENT INTO THE PRETRIAL

5 <span>A-1460-23</span>

INTERVENTION PROGRAM WAS ABRITRARY AND CAPRICIOUS AND AMOUNTS TO AN ABUSE OF DISCRETION.

POINT II

THE PROSECUTOR'S OBJECTION TO MR. ELHOREGY'S PTI APPLICATION WAS ARBITRARY AND CAPRICIOUS AND AMOUNTS TO A PATENT AND GROSS ABUSE OF DISCRETION.

POINT III

THE PROSECUTOR'S ACTIONS CLEARLY SUBVERT THE GOALS OF PTI.

II.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). The "primary goal" of PTI is the "rehabilitation of a person accused of a criminal offense," State v. Bell, 217 N.J. 336, 346 (2014), while "'spar[ing] them the rigors of the criminal justice system.'" State v. Randall, 414 N.J. Super. 414, 419 (App. Div. 2010) (quoting State v. Watkins, 193 N.J. 507, 513 (2008)). "Admission requires a positive recommendation from the PTI director and the consent of the prosecutor." State v. Negran, 178 N.J. 73, 80 (2003); see also R. 3:28-1(d).

6

To guide PTI Directors and prosecutors in their evaluation of a defendant's eligibility for PTI, N.J.S.A. 2C:43-12(e) enumerates seventeen non-exhaustive factors for a prosecutor to consider. Rule 3:28 enumerates similar considerations. Based on these factors, a PTI Director or prosecutor may determine an applicant's "amenability to correction" and "responsiveness to rehabilitation," and weigh those considerations against the "nature of the offense." N.J.S.A. 2C:43-12(b)(1). "[T]he prosecutor" and PTI Director "'must make an individualized assessment of the defendant, taking into account all relevant factors.'" State v. E.R., 471 N.J. Super. 234, 246 (App. Div. 2022) (quoting State v. K.S., 220 N.J. 190, 202 (2015)). The PTI Director and prosecutor must also provide a defendant with a written statement of reasons explaining the rationale for their decision. R. 3:28-9.

Our review of an appeal from denial of PTI is severely limited. Negran, 178 N.J. at 82. We apply the same de novo standard of review of a prosecutor's rejection of a PTI application as the trial court. State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015). The decision must "subvert[] the goals underlying PTI[,]" and have been "so wide of the mark . . . that fundamental fairness and justice require judicial intervention." E.R., 471 N.J. Super. at 246 (internal quotation marks omitted).

Defendant first argues that the PTI Director's recommendation to reject defendant from PTI was arbitrary and capricious. To challenge the refusal of a PTI Director, a defendant must demonstrate by a preponderance of the evidence, that the decision amounted to an abuse of discretion. State v. Burbano, 304 N.J. Super. 215, 222 (Law. Div. 1996). "Judicial disagreement with . . . reasons for rejection does not equate to [an] abuse of discretion so as to merit judicial override." State v. Motley, 369 N.J. Super. 314, 323 (App. Div. 2004) (citing State v. DeMarco, 107 N.J. 562, 566-67 (1987)).

In State v. Nwobu, the Supreme Court of New Jersey held the PTI Director's statement of reasons for denial of PTI enrollment was "adequate" even though it did not specifically discuss the defendant's background and only referred to two factors regarding the alleged offense: (i) that it was a second-degree offense, noting that this was the most important factor involved, and (ii) was a continuing pattern of anti-social behavior. 139 N.J. at 251-52. The Court stated that it "might prefer incorporation of more detailed information about defendant's background into the statement of reasons[,]" but "none of the three prongs supporting a finding of abuse of discretion is present[,]" and that "there was no failure to consider relevant factors." Id. at 253.

Here, the rejection letter sent by the PTI Director, unlike the letter in Nwobu, states "we have considered all factors and have determined that your client does not meet the criteria for entry into the program" and that the two factors were the "prevalent factors in determining" its rejection of defendant. Defendant has not demonstrated that the PTI Director's decision to only specifically include two factors in the letter is an abuse of discretion.

Although defendant also challenges the PTI Director's reliance on the prosecutor's press release, defendant does not contest any of the underlying facts of the case, nor does he claim the PTI Director considered irrelevant or inappropriate factors. Given neither of these prongs of the test are raised by defendant, we need not examine them. See Nwobu 139 N.J. at 253. Rather, we conclude an individualized assessment was completed.

B.

A "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his [or her] admission into PTI." Watkins, 193 N.J. at 520. "A reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision." Nwobu, 139 N.J. at 249. If a prosecutor's decision demonstrates consideration of all appropriate factors, it will not be disturbed absent a showing

that it was a patent and gross abuse of discretion.  K.S., 220 N.J. at 200.  We afford prosecutors "broad discretion to determine if a defendant should be diverted."  Id. at 199.  We address "only the 'most egregious examples of injustice and unfairness'" in reviewing a denial of PTI.  Negran, 178 N.J. at 82 (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)).

Therefore, a defendant "must 'clearly and convincingly' show that the decision [to deny admission into PTI] was a 'patent and gross abuse of . . . discretion.'"  K.S., 220 N.J. at 200 (quoting State v. Wallace, 146 N.J. 576, 582 (1996)).

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment . . . .  In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI].
>
> [State v. Roseman, 221 N.J. at 625 (quoting State v. Bender, 80 N.J. 84, 93 (1979)).]

"A patent and gross abuse of discretion is defined as a decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'"  Watkins, 193 N.J. at 520

10

(quoting Wallace, 146 N.J. at 582-83). "The question is not whether we agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Nwobu, 139 N.J. at 254.

Applying these standards, we discern no abuse of discretion in the BCPO's denial of defendant's application, much less one that is "patent and gross." The prosecutor considered and weighed all the factors. Although this was defendant's first criminal charge, "the interests of society may justify the denial of an application for admission into PTI even though a defendant has led an exemplary life except for the conduct which forms the basis of the pending criminal charges." State v. Seyler, 323 N.J. Super. 360, 370, (App. Div. 1999), aff'd, 163 N.J. 69 (2000). Simply being "'a first-time offender'" who "'admitted or accepted responsibility for the crime'" is not enough. Waters, 439 N.J. Super. at 227 (quoting Nwobu, 139 N.J. at 252). Here, the record fully supports the BCPO's denial of defendant's application, and the judge properly denied defendant's application for admission into the program.

## C.

Defendant also contends admission into the PTI program would serve the goal of providing an alternative to prosecution to an individual "who might be

11

harmed by the imposition of criminal sanctions when such an alternative can be expected to serve as a sufficient sanction to deter criminal conduct." He stresses his age, education, career as a pharmacist, lack of criminal history, and involvement in his two children's lives, including paying court-ordered child support as evidence that he is an "exceptionally productive member of society" who would be hindered by a conviction. He posits the prosecutor "inexplicitly thwarted an abundantly worthy and eligible first-time offender from participating in PTI and avoiding the stigma of a criminal conviction, thus subverting the goals underlying PTI."

The purposes or goals of PTI are to:

> (1) Provide applicants, on an equal basis, with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant, and when there is apparent causal connection between the offense charged and the rehabilitative or supervisory need, without which cause both the alleged offense and the need to prosecute might not have occurred; or
>
> (2) Provide an alternative to prosecution for applicants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct; or

12

(3) Provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with "victimless" offenses; [. . .] or

(4) Provide assistance to criminal calendars in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems; or

(5) Provide deterrence of future criminal or disorderly behavior by an applicant in a program of supervisory treatment.

[N.J.S.A. 2C:43-12(a).]

Given appellant had been ordered to take four defensive driving classes, has been involved in six reported accidents, and injured multiple victims in this incident, granting his PTI application would "not avoid a burdensome prosecution for a 'victimless' crime." The pressure on the criminal justice system that would be relieved pales in comparison to admitting appellant into PTI based on defendant's actions. The prosecutor's determination that appellant is not an ideal candidate for PTI is not a patent and gross abuse of discretion. Appellant did not meet his burden to prove that his rejection undermined the goals of the PTI program.

13

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14